1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | Case No.: 5:12-CV-04657-EJD |
| Plaintiff, | **ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT** |
| v. | |
| PEDRO SALVADOR SAUCEDO, | |
| | **[Re: Docket No. 14]** |
| Defendants. | |

Plaintiff, J & J Sports Productions, Inc. ("Plaintiff") is an international distributor of sports and entertainment programming that purchased the right to broadcast *"Star Power": Floyd Mayweather, Jr. v. Victor Ortiz Championship Fight Program*. Memorandum of Points and Authorities in Support of Plaintiff's Application for Default Judgment 1 ("Points and Authorities"), Docket Item No. 14-1. Plaintiff alleges that Defendant Pedro Salvador Saucedo (hereinafter "Defendant") illegally intercepted and broadcasted that program in Defendant's business establishment. Id. at 2. Defendant has failed to answer Plaintiff's complaint and default in favor of Plaintiff was entered by the Clerk on January 14, 2013. Clerk's Entry of Default 1 ("Entry"), Docket Item No. 12. Presently before the court is Plaintiff's motion for default judgment. After reviewing Plaintiff's brief, and for the foregoing reasons, the motion is GRANTED.

1

1

United States District Court
For the Northern District of California

## I.      Background

Plaintiff is an international distributor of sports and entertainment programming. Points and Authorities 1. Plaintiff purchased the right to broadcast the boxing match between Floyd Mayweather, Jr. and Victor Ortiz, entitled *"Star Power": Floyd Mayweather, Jr. v. Victor Ortiz Championship Fight Program* ("boxing match"). Id. The boxing match was broadcast nationwide on September 17, 2011. Id. In order for commercial establishments to broadcast the boxing match in their establishment the owners must purchase a license from Plaintiff. Id. at 1-2. That license allows the business to show the boxing match "for the benefit and entertainment of the patrons within their respective establishments." Id. at 2.

On September 17, 2011, private investigator Nathan Tate viewed the broadcast of the boxing match at Defendant's restaurant Mariscos El Pilar de Nayarit ("Restaurant"). Id. Defendant had not purchased a license from Plaintiff to broadcast the boxing match in his Restaurant. Id. The Restaurant's maximum capacity was 95 and the investigator counted 55 people in the Restaurant during each of three headcounts taken during his 10 minute visit to the Restaurant. Id. at 11. The Restaurant did not charge a cover to enter and watch the boxing match. Id. Investigator indicated in his affidavit that the Restaurant did not have a satellite dish on the date of the boxing match. Affidavit of Nathaniel Tate ("Tate Aff."), Docket Item No. 14-3.

Plaintiff filed this action against Defendant on September 6, 2012 and served Defendant with the complaint on November 23, 2012. Docket Item Nos. 1, 10. Defendant failed to answer Plaintiff's complaint and default was entered in favor of Plaintiff on January 4, 2013. Entry 1. Defendant failed to appear in this action or answer the allegations made by Plaintiff. Notice of Application for Default Judgment by the Court 2 ("Notice"), Docket Item No. 14. Plaintiff filed the instant motion for entry of default judgment on February 12, 2013. Id. at 3.

## II.     Discussion

### a.  Entering Default Judgment

When a defendant in civil litigation does not answer the charges against him or appear in court, the clerk may enter default judgment for the plaintiff. Fed. R. Civ. P. 55(a). If the plaintiff's request for damages "is for a sum certain or a sum that can be made certain by computation" the

2

1    clerk must enter judgment for the amount of damages against the defendant. Fed. R. Civ. P.

2    55(b)(1). Determining whether a plaintiff has requested a "sum certain or a sum that can be made

3    certain by computation" is not always a simple task, but the Ninth Circuit has identified

4    characteristics that are essential to making that determination. See Franchise Holding II, LLC. v.

5    Huntington Restaurants Group, Inc., 375 F.3d 922, 928-29 (9th Cir. 2004). First, "a claim is not a

6    sum certain unless no doubt remains as to the amount to which a plaintiff is entitled as a result of

7    defendant's default." Id. at 929. A "simple mathematical computation" should be one of very few

8    requirements for calculating the total judgment. Id. In Franchise Holding, the court determined that

9    the plaintiff requested a "sum certain" because it "presented the clerk with loan documents that set

10   forth the specific formulas for determining the amount owed." Id.

11        If the plaintiff's request for damages is not "for a sum certain or a sum that can be made

12   certain by computation," the plaintiff must apply to the court for entry of its request for default

13   judgment. Fed. R. Civ. P. 55(b)(2). The plaintiff will not be awarded damages until the court has

14   approved his application for default judgment. See id. "The district court's decision whether to

15   enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

16   1980).

17        Here, Plaintiff must apply to the Court for default judgment in this case because it is not

18   requesting a sum certain. Plaintiff seeks default judgment in its favor and an award of damages

19   totaling $112,200 for Defendant's violation of 47 § U.S.C. 605 and for the tort of conversion.

20   Declaration of Thomas P. Riley in Support for Plaintiff's Application for Default Judgment 2

21   ("Support"), Docket Item No. 14-2. Plaintiff has also alleged violations of 47 § U.S.C. 553. Notice

22   3.

23        Before this Court can approve Plaintiff's application for default judgment, it must consider

24   the following factors: (1) the possibility of prejudice to Plaintiff; (2) the merits of Plaintiff's

25   substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

26   (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

27   excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

28

*United States District Court*
*For the Northern District of California*

3
Case No.: 5:12-CV-04657-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

1    favoring decisions on the merits. J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 WL

2    668065, at *3 (N.D. Cal. Feb. 19, 2010). The court will address each of these factors in turn.

3         As to the first factor, if Plaintiff's application for default judgment is denied it would be left

4    with no remedy because Defendant has refused to litigate this action. Entry 1-3. Thus, Plaintiff

5    would be prejudiced if this Court were to deny its application for default judgment. This factor

6    weighs in favor of default judgment. See J & J Sports Prods, Inc. v. Concepcion, No. 10-CV-

7    05092, 2011 WL 2220101, at *2 (N.D. Cal. June 7, 2011).

8         As to the second and third factors, Plaintiff's substantive claims appear meritorious and its

9    complaint is sufficient. Plaintiff has alleged that Defendant violated two sections of Title 47 and

10   the alleged activities of Defendant appear to be violations of those sections. See Points and

11   Authorities 5-14. Additionally, Plaintiff has stated relevant laws pursuant to which the Court may

12   provide relief. See id. These factors weigh in favor of default judgment.

13        As to the fourth factor, the sum of money at stake in this action has yet to be determined but

14   the damages cannot exceed the amounts specified in 47 § U.S.C. 553, and the maximum allowable

15   for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced

16   damages may not exceed $50,000. 47 § U.S.C. 553(c)(3)(A)(ii) & (B). Plaintiff is seeking $2,200

17   in damages for conversion, or the amount Defendant would have been required to pay had he

18   ordered the boxing match at issue in this action. Points and Authorities 20. The relatively small

19   sum of money at stake here weighs in favor of default judgment.

20        As to the fifth factor, the Court is unable to determine whether there is a possibility of a

21   dispute concerning material facts because Defendant has refused to answer the allegations made

22   against him. This factor weighs in favor of default judgment.

23        As to the sixth factor, the Court considers the presence of "excusable neglect." The sixth

24   factor relates to the potential for reversing a default judgment on appeal because Defendant acted

25   with "excusable neglect" when it failed to litigate the action. Rule 60(b)(1) of the Federal Rules of

26   Civil Procedure allows the court to "relieve a party or its legal representative from a final judgment

27   order" for "excusable neglect." Fed. R. Civ. P. 60(b)(1). The concept of "excusable neglect" is

28   equitable and takes "account of factors such as 'prejudice, the length of the delay and impact on

United States District Court
For the Northern District of California

4

Case No.: 5:12-CV-04657-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

1    judicial proceedings, the reason for the delay, including whether it was within the reasonable

2    control of the movant, and whether the movant acted in good faith.'" TCI Group Life Ins. Plan v.

3    Knoebber, 244 F.3d 691, 696 (9th Cir. 2001) (quoting Pioneer Inv. Servs. Co. v. Brunswick

4    Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). The balancing of these factors is "committed to the

5    discretion of the district courts." Brandt v. American Bankers Ins. Co. of Florida, 653 F.3d 1108,

6    1112 (9th Cir. 2011).  As discussed above, Plaintiff in this case faces the possibility of prejudice if

7    the court does not grant its application for default judgment. Defendant was properly served on

8    November 23, 2012 and has failed to involve himself in the litigation at every stage. Proof of

9    Service ("Service"), Docket Item No. 10. Defendant's Answer was due on December 14, 2012 and

10   was not received. Id. The Court's attempt on January 18, 2013 to notify Defendant of entry of

11   default was also unsuccessful as Defendant had moved without notifying the court. Docket Item

12   No. 13. After considering the facts discussed above, this Court concludes that Defendant did not

13   act with "excusable neglect" when he failed to appear or answer Plaintiff's complaint. This factor

14   weighs in favor of default judgment.

15   Lastly, the seventh and final factor also weighs in favor of default judgment because

16   "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default

17   judgment in situations such as this where defendants refuse to litigate." Concepcion, No. 10-CV-

18   05092, 2011 WL 2220101, at *2; See also Fed. R. Civ. P. 55(b)(2).

19   After consideration of all the factors discussed above, this Court GRANTS Plaintiff's

20   application for default judgment. The Court will now consider the statutory and enhanced damages

21   requested by Plaintiff.

22   **b. Statutory Damages**

23   Plaintiff requests $10,000 in statutory damages as a result of Defendant's violation of 47

24   U.S.C. § 605(e)(3)(C)(i)(II). The statute prohibits any person from receiving or transmitting "wire

25   or radio" signals except through authorized channels. 47 U.S.C. § 605(a). More specifically, the

26   statute "'prohibits commercial establishments from intercepting and broadcasting to its patron

27   satellite cable programming.'" Ro, No. 09-CV-02860, 2010 WL 668065, at *3 (quoting J & J

28   Sports Prods., Inc. v. Guzman, No. 08-CV-05469, 2009 WL 1034218, at *2 (N.D. Cal. 2009)). The

5

Case No.: 5:12-CV-04657-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1   statute provides statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. §

2   605(e)(3)(C)(i)(II).

3   Plaintiff has not requested statutory damages under 47 U.S.C. § 553(c)(3)(ii) but has

4   nonetheless alleged that Defendant violated the statute. Notice 3.  This Section prohibits "a person

5   from 'intercepting or receiving or assisting in intercepting or receiving any communications service

6   offered over a cable system.'" Ro, No. 09-CV-02860, 2010 WL 668065, at *3 (quoting J & J

7   Sports Prods, Inc. v. Manzano, No. 08-CV-01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29,

8   2008)).  Section 553 prohibits "both illegally receiving cable programming and helping others to

9   illegally receive cable programming." Manzano, No. 08-CV-01872, 2008 WL 4542962, at *2.

10   Statutory damages under Section 553 range from $250 to a maximum of $10,000, "as the court

11   considers just." 47 U.S.C. § 553(c)(3)(A)(ii).

### 1.   Only Statutory Damages Under 47 U.S.C. § 553 are Appropriate in this Case

14   Since Plaintiff has alleged violations of two sections of Title 47 which address different

15   activities and provide different ranges of statutory damages, this Court must decide which section

16   will be utilized to calculate statutory damages. Notice 3; See Manzano, 2008 WL 4542962, at *2-3.

17   The two sections are not "coextensive"—they prohibit two distinctly different activities. Manzano,

18   No. 08-CV-01872, 2008 WL 4542962, at *2. Plaintiff alleges that because Defendant has not

19   responded to Plaintiff's complaint, there is no way to determine how Defendant intercepted the

20   boxing match. Points and Authorities 8. However, the investigator indicated that Defendant's

21   establishment does not have a satellite dish. Tate Aff 1. As a result, Defendant most likely

22   intercepted the program via a cable signal in violation of Section 553.

### 2.   Approved Statutory Damages

24   This court awards Plaintiff $250 in statutory damages under 47 § U.S.C. 553. The court

25   awards this amount because Plaintiff has not developed the facts of the case enough to justify any

26   increase from the minimum award allowed under the statute. See Points and Authorities 11. As in

27   past cases before other courts in this district, Plaintiff's investigator here failed to determine the

28   means of intercepting the boxing match.  Additionally Plaintiff addresses the facts of this case in

6

Case No.: 5:12-CV-04657-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1  less than 10 lines. See, e.g. J & J Sports Prods., Inc. v. Jaunillo, No. 10-CV-01801, 2010 WL

2  5059539, at *2 (N.D. Cal. Dec. 6, 2010). Plaintiff has been criticized in the past by judges in this

3  district for failing to tailor its complaint to the facts of the case:

4      Plaintiff spends barely 20 lines addressing the specific facts of the alleged violation-

5      the rest consists of boilerplate legal arguments cut and pasted from previous filings.

6      Without additional evidence supporting a more egregious violation, this order

7      awards $250 in statutory damages under Section 553. Ro, No. 09-CV-02860, 2010

8      WL 668065, at *4.

9  This Court reiterates these observations—without more, Plaintiff is entitled to the minimum

10  statutory damages allowable.

11      Additionally, Plaintiff could save this Court and others much analysis by simply requesting

12  statutory damages under the appropriate statute instead of requiring each court to inquire as to

13  whether the boxing match was intercepted via cable or satellite. Or in this case, Plaintiff could have

14  read the affidavit signed by the investigator, indicating that Defendant's establishment did not have

15  a satellite dish, and tailored his pleadings accordingly. See Tate Aff 1. Plaintiff should only be

16  awarded the minimum fees under 47 § U.S.C. 553 when it refuses to investigate claims more

17  thoroughly and fails to tailor its complaint to the specific case.

18      **c.   Enhanced Damages**

19          **1.   47 U.S.C. § 553(c)(3)(B)**

20      Section 553 violations may warrant enhanced damages of no more than $50,000 when the

21  court finds "that the violation was committed willfully and for purposes of commercial advantage

22  or private financial gain." 47 § U.S.C. 553(c)(3)(B). The Ninth Circuit has not set forth controlling

23  factors for the determination of when enhanced damages are appropriate in this context, but various

24  factors specific to this unique line of cases have been persuasive to this Court. See Concepcion,

25  No. 10-CV-05092, 2011 WL 2220101, at *4. The following factors assist the Court in determining

26  whether enhanced damages are appropriate: "use of cover charge, increase in food price during

27  programming, presence of advertisement, number of patrons, number of televisions used, and

28  impact of the offender's conduct on the claimant." Id. Courts may also award enhanced damages

7

Case No.: 5:12-CV-04657-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

1    when the defendant has violated sections 605 or 553 of Title 47 on other occasions. See J & J

2    Sports Prods., Inc. v. Paniagua, No. 10-CV-05141, 2011 WL 996257, at *2 (N.D. Cal. Mar 21,

3    2011) ("The Court agrees with Plaintiff that a higher amount of enhanced damages is appropriate

4    given Defendant's multiple violations").

5          In Paniagua, the court concluded that the defendant, who was accused of broadcasting a

6    boxing match in his commercial establishment without purchasing a sublicense from the plaintiff,

7    acted "willfully for commercial advantage and private financial gain." Paniagua, No. 10-CV-

8    05141, 2011 WL 996257, at *2. The court reached that conclusion because the broadcast of the

9    boxing match was "encrypted and subject to distribution rights," and as such, the defendant must

10   have committed some wrongful act to intercept the boxing match for broadcast in its business

11   establishment. Id. The plaintiff was awarded only a "relatively modest" enhanced damages award.

12   Id. "Courts in the Northern District of California have found relatively modest enhancements when

13   the case involved a limited number of patrons" even if Defendant used a cover charge. Id. For

14   example, in Garden City Boxing Club, Inc. v. Lan Thu Tran, another court in this district awarded

15   $1,000 in statutory damages and $5,000 in enhanced damages when 40 patrons were present and a

16   $10 cover charge was imposed. Garden City Boxing Club, Inc. v. Lan Thu Tran, No. 05-CV-

17   05017, 2006 WL 2691431, at *5-6 (N.D. Cal. Sept. 20, 2006). In Paniagua, the court awarded

18   $2,200 in enhanced damages when there were 80-85 patrons present and no cover was charged.

19   Paniagua, No. 10-CV-05141, 2011 WL  996257, at *2. The amount of enhanced damages awarded

20   in that case was equal to the cost of the commercial license to broadcast the boxing match. Id. at

21   *3.

22         In this case, Defendant did not charge a cover to patrons or require a purchase of food or

23   drink on the evening of the boxing match. Tate Aff 1. Two television sets aired the boxing match in

24   the Restaurant and 55 people were present during each one of the investigator's headcounts. Id.

25   Plaintiff has not alleged that Defendant is a repeat offender of the statutes at issue in this case.

26   Accordingly, Plaintiff is entitled to $2,200 in enhanced damages, i.e. the value of the commercial

27   license to air the program.

28

Case No.: 5:12-CV-04657-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

United States District Court
For the Northern District of California

**d. Conversion**

Plaintiff requests $2,200 in damages for the tort of conversion. Cal. Civ. Code § 3336; Points and Authorities 20. "The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the property right of another; and 3) damages." <u>Paniagua</u>, No. 10-CV-05141, 2011 WL 996257, at *3. Plaintiff has shown that it owns the right to distribute the boxing match at issue and has properly alleged the misappropriation of that right to distribute the program. Notice 2. Damages for the tort of conversion are "based on the value of the property at the time of the conversion." <u>Paniagua</u>, No. 10-CV-05141, 2011 WL 996257, at *3. The value of the commercial license to broadcast the boxing match at the time of conversion was $2,200. Points and Authorities 20. Accordingly, this Court awards Plaintiff $2,200 in damages for conversion.

**III.    Conclusion**

For the reasons stated above, the court GRANTS Plaintiff's Motion for Default Judgment. Judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $4,650 in total damages.  The clerk shall close the file.

**IT IS SO ORDERED**

Dated:  May 30, 2013



_____
EDWARD J. DAVILA
United States District Judge

9

United States District Court
For the Northern District of California